## Harry B. Andrews v. Edwin C. Kingsbury.

1. CONSIDERATION—*when there is a, for agreement not to engage in particular business in particular locality.* Where the complainant has purchased of the defendant a particular business and receives a bill of sale therefor, from which there is omitted, by mistake, an agreement by the defendant not to engage in a like business in a specified locality for a period of years, and where such omission is rectified by a separate instrument in which the defendant makes such agreement, such bill of sale and agreement will be regarded as parts of one transaction and the agreement will be deemed sufficiently supported by the consideration passing upon the purchase of such business.

2. RESTRAINT OF TRADE—*when contract is not illegal as in.* A contract not to engage in a particular business for a limited period of time (five years in this case) and within a restricted area of territory, if based upon a sufficient consideration, is good and enforceable in law.

3. INJUNCTION—*when, lies to restrain defendant from engaging in particular business.* An injunction lies to enforce a contract by which the defendant has agreed not to engage in a particular business for a limited time and within a restricted area of territory, notwithstanding it does not appear by allegation or proof that the complainant has or will suffer financial loss by reason of the violation of such agreement.

Proceeding to enjoin defendant from engaging in particular business. Appeal from the Circuit Court of Richland County; the Hon. PRINCE A. PEARCE, Judge, presiding. Heard in this court at the August term, 1903. Affirmed. Opinion filed March 10, 1904.

JOHN LYNCH, JR., H. G. MORRIS, and W. F. FOSTER, for appellant.

R. B. WITCHER, R. S. C. REAUGH, and ALLEN & FRITCHEY, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On November 2, 1901, appellant, Harry B. Andrews, made a bill of sale of the printing plant of a certain newspaper, known as the Olney Advocate, together with the subscription list, accounts and good will, to appellee, Edwin C. Kingsbury. On November 6, 1901, appellant executed the following instrument:

"I, H. B. Andrews, having sold the 'Olney Advocate,' a weekly newspaper, published at Olney, Illinois, and trans-

ferred all my right, title and interest to the same, including good will, to E. C. Kingsbury, I hereby agree not to engage in the newspaper business in the city of Olney, Illinois, either as proprietor, editor, manager or in any way whatever, either for myself or for any one else, for the period of five years from date of this agreement, provided that E. C. Kingsbury remains in the newspaper business in Olney, Illinois, for that length of time."

Afterwards, on or about December 2, 1902, appellant became interested in another paper in the city of Olney, known as the Olney Times, and that paper shortly afterwards contained an article signed by appellant, stating that "with this issue of the Olney Times, the business and editorial management of the Times Printing Co. will be under the direction and control of H. B. Andrews." At the April term, 1903, of the Richland Circuit Court, appellee, who as the proprietor of the Olney Advocate was still doing business in Olney, filed a bill for an injunction to restrain appellant from violating said agreement. A temporary injunction was issued restraining appellant from engaging in the newspaper, publishing or printing business, in the city of Olney, either as proprietor, editor, manager or in any way whatever, either for himself or any one else, and from soliciting subscriptions or printing business of any kind or in any manner violating his agreement with appellee, prior to the 6th day of November, 1906.

Appellant subsequently filed his answer, in which he alleged that he was not the proprietor or owner of the Olney Advocate at the time of the sale to appellee, but that said paper was then owned, operated and published by Laura V. Andrews (his wife); that appellant had control and management of said paper as her employee and agent; that the negotiations for the purchase and sale of the newspaper property were carried on by H. H. Kingsbury as agent of appellee, and appellant as the agent of his wife, Laura V. Andrews; that after the completion of the sale and transfer of the property, said H. H. Kingsbury wrote the paper above set out and appellant signed it at his request; that said agreement was no part of the sale of said

property, nor in any manner connected therewith; that the paper was signed by appellant without any consideration therefor and without the knowledge of appellee or the said Laura V. Andrews; that appellant had been offered employment by the Times Printing Company, and had accepted the offer; that the newspaper known as the Olney Times, occupies a different field from the Olney Advocate, supporting different policies and parties, and that the papers are not in any sense competitors. Appellant in his answer asked the same benefit thereof, as if he had demurred to complainant's bill. Upon the final hearing the court found the allegations in the bill to be true and decreed that the temporary injunction be made permanent, for five years from the date of the sale of the paper, as prayed for in the bill.

Appellant claims there was no consideration for the agreement made by him not to engage in the newspaper business again in Olney for the period of five years; that the Advocate property belonged to his wife and he was acting as her agent in the sale of the same, as appellee well knew; that the transfer of his wife's property had been previously consummated and this agreement was a personal agreement of appellant, and not a part of that transaction. We consider it immaterial so far as the questions involved in this case are concerned, whether the property sold by appellant belonged to him or was really owned by his wife, for if, as he admits in his answer, he was managing the property for her as her agent and made the sale for her, then any agreement which he himself made to further the sale and as a part of the consideration thereof, would be binding upon him.

Did appellant make the agreement in question as a part of the consideration for the trade? Was it the intention and understanding of both appellant and appellee, that the latter in consideration of the sale of the property, for the price agreed upon between them, should also refrain from engaging in the newspaper business in Olney, for the period named? Appellee testified that about the 28th day of

August, 1901, he had a conversation with appellant at the home of the latter in reference to the purchase of the property, and on that occasion appellant proposed, for the consideration of $4,000, to sell his paper and agree not to go into the newspaper business again in the city of Olney; that on the following day, at the home of appellee, appellant made the same proposition; that in the latter part of October, appellant submitted a proposition or memorandum, in writing, since destroyed, to the same effect as the two previous propositions; that he conducted all the negotiations leading to the purchase with appellant except delivering the papers, which his father, H. H. Kingsbury, did for him.    Appellee also testified without objection, that the same transaction continued from the 29th of August, 1901, to the final consummation of the trade; that it was distinctly understood between the parties, that appellant would not engage in the newspaper business in Olney and that such was the agreement between the parties.

Appellant testified that the proposition or memorandum referred to by appellee, contained only a statement of the payments he would accept, and included no proposition that he would not engage again in the newspaper business in Olney.  He admitted that on two occasions during the negotiations, he had proposed not to enter into the newspaper business again, but said he supposed those negotiations were at an end.   The bill of sale, while dated November 2, the day on which it was prepared by appellee in his office at Chicago where he then resided, was not signed by appellant until November 4, and the trade was not consummated by the delivery of the notes, chattel mortgage and check to appellant, until November 5, the day before the agreement in question here was executed.   The undisputed fact that appellant, when asked by H. H. Kingsbury to sign the agreement, consented to do so at once without any conditions or objections, and that he executed the same immediately when presented to him, is evidence that he had the matter in mind and tends strongly to corroborate the testimony of appellee.   It is also to be noted that the sale

was made for the sum of $4,000, which was the amount named in all the propositions 'of appellant, although the manner in which payment was to be made was changed somewhat, appellee giving notes secured by chattel mortgage on the property sold for the greater portion of the purchase money, instead of paying all cash. The evidence, in our opinion, warrants the belief that the provision in question was left out of the bill of sale by mistake, which, when discovered, was rectified at once by the new writing. The agreement must therefore be considered as part of the original transaction, and covered by the same consideration.

It is further contended by appellant that the agreement is void because it is an unreasonable restraint upon trade and business and therefore against public policy. " The rule is well settled that any partial restraint of trade or any agreement not to transact business at specified. places or with particular persons, or beyond a limited distance, or not to practice medicine within reasonable bounds, if there be some legal consideration for the restraint, will not invalidate the agreement. If there is a reasonable limitation only and a consideration capable of supporting the agreement, it will be upheld." Linn v. Sigsbee, 67 Ill. 75; Moore v. Bennett, 140 Ill. 69; Hursen v. Gavin, 59 Ill. App. 66. The contract in this case is limited both as to time and territory, is reasonable and based on a good consideration. It is therefore a valid contract and must be sustained.

The contention of appellant that the decree cannot be sustained for the reason that the bill fails to allege and the evidence to show that appellee will suffer any financial injury if appellant accepts employment from another newspaper, is not sound in law. In Consolidated Coal Co. v. Schmisseur, 135 Ill. 271, it was said: " In respect of purely negative covenants annexed to or contained in contracts or leases, courts of equity will frequently interpose by injunction, and indirectly enforce specific performance of such negative covenants, by prohibiting their breach; and it seems to be well settled, that where there is an express negative covenant, courts of equity will entertain bills for

Andrews v. Kingsbury.

injunction to prevent their breach, although the same will occasion no substantial injury, or though the damages, if any, be recoverable at law." The injunction in this case, in effect, enforces a specific performance of the negative covenants of the agreement made by appellant by restraining him from committing a breach thereof. In Stewart v. Challacombe, 11 Ill. App. 379, where suit was brought to recover damages for violation of an agreement, made by appellant, not to enter into the hardware trade again in the city of Hillsboro, the following language is found in the opinion of the court: "But, it is said, appellees ought to be allowed to recover back the consideration paid, because of the difficulty of ascertaining the damages by any other rule. This difficulty has long been recognized and it is for this reason that courts of equity interfere by injunction to restrain parties from entering into trade in violation of such contracts." In this case appellant violated his contract not to enter into the newspaper business in the city of Olney again for the period of five years, by entering again into the same business within the time limited. Having received a consideration for the agreement, he cannot be heard to complain when appellee seeks to enforce it against him even though it was not shown by the bill or proofs, wherein appellee would suffer any financial loss. Appellee had a right under the general rules of equity, to compel appellant to specifically perform his agreement, which in good conscience he ought to observe, by means of an injunction restraining him from committing a breach thereof.

The decree of the court below will be affirmed.

*Affirmed.*