ROBERT H. McCARTER, attorney-general,

*v.*

FIREMEN'S INSURANCE COMPANY et al.

[Decided August 25th, 1905.]

1. The common law does not treat agreements in restraint of trade as being illegal in the ordinary sense of the word, but merely as being unenforceable.

2. In the absence of statute authorizing it, the attorney-general may not maintain a suit to enjoin insurers against carrying out an agreement regulating rates, though against public policy, as in restraint of trade, and the fact that the insurers are corporations makes no difference.

On information.

*Mr. Malcolm MacLear,* for the informant.

*Mr. Richard V. Lindabury,* for the defendant

STEVENS, V. C.

This is an injunction bill. The defendants are fire insurance companies—corporations of this and other states. They have, by their agents, formed a voluntary association, called the Newark Fire Insurance Exchange, one of whose principal objects is the establishment of "adequate and just rates of premium," uniform and obligatory upon all of them. The attorney-general seeks to restrain them from regulating and maintaining these rates. There is no relator, and, consequently, no private right involved. The information seeks to enjoin an agreement, *intra vires* and enforceable, unless contrary to public policy. It appears to be without support in common law precedent. In some of the western and southern states statutes have been passed condemning combinations among certain kinds of companies, and, among others, insurance companies. These statutes give to

the representative of the state the right to apply for an injunction. Congress, too, has passed an act to protect interstate trade and commerce against unlawful restraints and monopolies, and has given to the attorney-general of the United States a like right. Many informations have been filed under these acts, but they are not precedents for this proceeding because this state has not legislated on the subject.

May agreements, then, because in restraint of trade and commerce, be, in the absence of statutory authority, enjoined in equity, at the suit of the attorney-general? I do not attach any weight to the suggestion that under the case of *Paul* v. *Virginia,* *8 Wall. 168,* and the cases which have followed it, the business of insurance is not trade or commerce, for while the distinction is important in its relation to the commerce clause of the federal constitution, it is unimportant where the question arises in the state courts. The principle that condemns such agreements is applied not only to transactions of trade and commerce, strictly so called, but to many other transactions; for instance, to agreements between physicians (*Mandeville* v. *Harman, 42 N. J. Eq. (15 Stew.) 185*), between attorneys and their articled clerks (*Nicholls* v. *Stretton, 10 Q. B. \*346*), between manufacturers relative to the wages of their workmen (*Hilton* v. *Eckersley, 6 El. & Bl. 47*), between stenographers (*More* v. *Bennett, 140 Ill. 69*).

The point upon which, as it seems to me, the attorney-general must fail, is this: The common law does not treat agreements in restraint of trade as being illegal in the ordinary sense of the word, but merely as being unenforceable. As far back as *Mitchell* v. *Reynolds, 10 Mod. \*134 (1711)*, Chief-Justice Parker said: "It is not a reason against them that they are *against* law—I mean in a proper sense, for in an improper sense they are." *Mogul Steamship Co.* v. *McGregor, A. C. 89 (1892)*, was a suit by a shipowner, injured by the acts of an association of shipowners, formed for the purpose of destroying, by competitive methods, his trade at a Chinese port, and so securing for itself a monopoly of the trade of that port. It was, as one of the judges described it, a scheme, by means of competition in the near future, to prevent competition in the remoter future. In the house of

lords, Lord Halsbury said: "There are some contracts to which the law will not give effect, and therefore, although the parties may enter into what but for the elements which the law condemns would be perfect contracts, the law will not allow them to operate as contracts, notwithstanding that in point of form the parties have agreed. Some such contracts may be void on the ground of immorality; some on the ground that they are contrary to public policy—as, for example, in restraint of trade—and contracts so tainted the law will not lend its aid to enforce. It treats them as if they had not been made at all. But the more accurate use of the word 'unlawful,' which would bring the contract within the qualification I have quoted from the judgment of the exchequer chamber, namely, as *contrary to law* [the italics are the chancellor's], is not applicable to such contracts. It has never been held that a contract in restraint of trade is contrary to the law in the sense that I have indicated." It was accordingly held that the action would not lie.

In the case of *United States* v. *Addyston Pipe and Steel Co., 85 Fed. Rep. 271; 29 C. C. A. 147,* Judge Taft, in an exhaustive and illuminating opinion on the subject of contracts in restraint of trade, says: "Contracts that were in unreasonable restraint of trade at common law were not unlawful in the sense of being criminal or giving rise to a civil action for damages in favor of one prejudicially affected thereby, but were simply void and were not enforced by the courts. The effect of the act of 1890 (the act of congress to protect trade and commerce against unlawful restraints and monopolies) is to render such contracts unlawful in an affirmative or positive sense, and punishable as a misdemeanor, and to create a right of civil action for damages in favor of those injured thereby, and a *civil remedy by injunction* in favor of both private persons and the public against the execution of such contracts and the maintenance of such trade restraints."

The same idea is contained in the following passage taken from the opinion of *Ellicott* v. *Chamberlin,* in the court of errors and appeals, *38 N. J. Eq. (11 Stew.) 604:* "If a contract be illegal as against public policy, its invalidity will be a defence while it remains unexecuted. If the illegal contract be

in part performed, and money has been paid in pursuance of it, no action will lie to recover the money back. The law will not assist either party to an illegal contract, and the parties being *in pari delicto*, it will leave them where it finds them. If the contract be still executory, it will not enforce it, and if already executed it will not restore the price paid nor the property delivered."

These citations show that in this class of cases the common law gave no affirmative relief. When suit was brought upon the agreement the courts refused to enforce it, and that was all. In the *Mogul Steamship Case*, the judges admitted that the agreement would not have been enforceable among the members of the association, but they said that it did not follow that a stranger might therefore sue because of its damaging effect upon *him*. If one alleging himself to be specially injured could not sue, it is difficult to see on what ground the attorney-general can. I have been referred to no common law precedent for such a suit, and I do not think any can be found. This, in itself, is an argument against the jurisdiction. The combination is not indictable, and there is therefore no public wrong inflicted, at least of a punishable kind. The agreement, Lord Halsbury says, is not in any *positive* sense contrary to law. If not contrary to law in a positive sense, what ground is there for the state's action? The only ground suggested is public policy, but if that is ground for equitable interference in the present instance, then, on the same ground, the attorney-general may apply for an injunction to restrain employers, on the one hand, and workmen, on the other, from combining to regulate wages; to restrain physicians and other professional men from limiting competition with themselves where their agreement goes beyond what may be necessary to afford a fair protection; to restrain people from concluding or enforcing usurious bargains—in a word, to restrain them from making *any* illegal contract, for I suppose all contracts denounced by the law as illegal are, or are considered to be, contrary to public policy. This would, indeed, be giving to equity a jurisdiction which has not hitherto been attributed to it.

But it is said the association is composed of the representatives of corporations. 'If these corporations were public or *quasi*-public bodies, and if the attorney-general were here asked to enjoin them from doing *ultra vires* acts, to the public injury, as in *Attorney-General* v. *Central Railroad Co., 50 N. J. Eq. (5 Dick.) 52,* the case would be different. "It may," says Vice-Chancellor Reed, in *Attorney-General* v. *American Tobacco Co., 55 N. J. Eq. (10 Dick.) 352, 366,* "be regarded as settled that where a *quasi*-public corporation exceeds its corporate powers and its acts involve a nuisance or otherwise tend to a public injury, a bill may be exhibited against such corporation in the court of chancery." But these companies are not public or *quasi*-public bodies, and it is not pretended that they have exceeded their corporate power. All that can be said is that in the exercise of their power of fixing rates they have made an unenforceable agreement. The business of insurance is one that may be carried on, and often has been carried on, by individuals. This being so, I am unable to understand why these companies should be held to an accountability different from that which natural persons, doing the same acts, would be held to. The mere fact that a *private corporation* is a party to a suit involving contract rights has never, in the slightest degree, tended to give equity a jurisdiction which it would not otherwise possess, and if the court would not have it where natural persons are suitors, neither will it have it where private companies are.

Without, then, deciding whether the articles of association are illegal in the sense that I have mentioned—a question to be determined by courts of law—I think the information should, for the reason stated, be dismissed.