John Powers et al., Appellees, v. M. Huber, Appellant.

Gen. No. 17,659.

CONTRACTS—*what not against public policy.*    There is no rule of law or public policy which prohibits the members of two firms doing business in the same line, from forming a co-partnership to conduct their joint business.

Appeal from the Superior Court of Cook county; the HON. WILLIAM F. COOPER, Judge, presiding.    Heard in the Branch Appellate Court at the March term, 1911.    Affirmed.    Opinion filed November 14, 1911.

SAMUEL B. KING, for appellant.

HERREN & COBURN, for appellees; H. T. ASPERN, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

This appeal was taken by the defendant in the court below, from an interlocutory order entered by the court, appointing a receiver of the assets belonging to or receivable by a number of persons constituting a copartnership doing business as the Chicago Disposal Company.

The bill of complaint was filed by John Powers, Edward J. Glackin, A. C. Preble and S. Krug, and states that on November 30, 1910, they entered into an agreement with the defendant M. Huber to form a copartnership for the management, conduct and operation of the Twelfth Street Disposal Station located on the Chicago river, near Twelfth street, the property of complainants, and the Huber Disposal Station, located at 333 West Taylor street, which was owned by defendant Huber.

The bill sets out the agreement signed by the parties, which is, in substance, as follows:

It bears date November 30, 1910, and by its terms is to become effective December 1, 1910, and to continue in force until December 1, 1912; and provides that the parties under the management of M. Huber and Edward J. Glackin will conduct and operate the Twelfth Street Disposal Station and the Huber Disposal Station, and that they will, under the firm name of Chicago Disposal Company, assume jurisdiction over and control of dumping charges, and dispose of all material received to the best advantage, and will operate all or any part of the facilities of both stations according to the interests of the business and its economical operation; that the new firm will hire, maintain and pay for the supervisory and clerical service and manual labor and incidental expense necessary to

conduct the business as outlined, and that the firm will make weekly report of all business handled showing the gross revenue and cost of operating, and at the same time distribute the net revenue as agreed upon between the proprietors of the stations, namely, fifty per cent. thereof to each concern.

It was provided in the agreement that each of the owners of the stations would retain control over his own station and pay the rent of the same independent of the agreement, and that if for any reason either party to the contract loses control of his station, the agreement was to become null and void.

The agreement further provides for the salaries of Huber and Glackin for their services as managers of the Chicago Disposal Company, at the rate or sum of five dollars per month each during the life of the contract.

The bill then represents that the business was entered upon and has ever since continued to be carried on by the complainants and the defendant in pursuance of the agreement, and that no other articles or instruments have been prepared and executed between them; and that the value of the business is about fifteen thousand dollars.

The complainants represent that they have great reason to be dissatisfied with the conduct of the defendant, who it is averred, has been managing the business, and instead of making weekly reports of all the business handled by him while in the management and control of the firm business, showing the gross revenue and cost of operating, and instead of distributing the net revenue as agreed upon, the defendant has during all of the time that he has conducted the business, namely, from the first of December, 1910, until the filing of the bill, collected all the moneys arising from the business and has failed to make the weekly reports required by the agreement, and has taken the proceeds

and money and applied the same to his own use and for his own benefit.

The bill represents that complainants have reason to believe and do believe that large sums of money, amounting to several thousands of dollars, have been collected by the defendant during the management of the business, and that the disbursements, if any have been made by the defendant, have not been reported nor have the receipts, and the complainants have reason to believe that the money has been converted by the defendant to his own use, and that he is concealing from complainants the receipts and disbursements with a view of preventing them from receiving their *pro rata* amount of the profits arising from the business; that the sums of money he is applying to his own use, in violation of the agreement, are large—amounting to thousands of dollars, although the exact amount is unknown to the complainants.

The bill further avers that the defendant has been requested frequently to make and give to complainants a correct statement of all receipts and disbursements during the months of January, February and March, 1911, during his management and conduct of the business, but the defendant has wholly failed and refused to do so, and has continued to collect and apply the moneys arising from the partnership to his own use without paying to the complainants that portion of the same which, under the contract, he was obligated to pay.

The bill further represents that the defendant has, as the complainants are informed, assumed control in his own right over the property belonging to the complainants, and has given notice to complainants that he will continue to treat the contract made and entered into between himself and the complainants as terminated, and will, in the future, operate the business and assume control of complainants' property in disregard of the rights and interests of complain-

ants, and that he is threatening to apply the proceeds arising from the business in the future to his own use.

The complainants further represent that the defendant has in fact received the sum of about ten thousand dollars and upwards, arising from the business, fifty per cent. of which justly belongs to the complainants.

The bill prays for an answer by the defendant, but not under oath; for an accounting; that a receiver be appointed *pendente lite* to take charge of the partnership books of account, and collect whatever money may belong or be due to the said firm.

The bill was verified, and on March 30, 1911, an order of court was entered reciting the appearance of both parties by counsel and upon argument, appoints a receiver to take charge of the business and the effects of the late partnership of John Powers, Edward J. Glackin, A. C. Preble, S. Krug and M. Huber, described in the pleadings, the receiver to file a bond of two thousand dollars.

And the order further provides that the defendant shall deliver all books, accounts, securities, evidence of indebtedness and effects of whatever character and kind belonging to the partnership to the receiver, and that the receiver take charge of and operate the business of the complainants and defendant and report his conduct to the court.

From the order appointing the receiver the defendant, Huber, prosecutes this appeal, and contends that the court below was without jurisdiction as a court of equity to appoint a receiver, upon the ground: first, that the contract has for its express object and purpose the fixing and maintaining of rates between competing companies doing the same kind of business and in the same territory, and is therefore against public policy, and a court of equity will not lend its aid to either party; and second, that the contract does not create the relation of partners between the contracting parties.

124    APPELLATE COURTS OF ILLINOIS.

Collins v. The Met. W. S. Elev. R'y Co., 166 Ill. App. 124.

The contract set out in the bill is a crude and informal affair, but in substance it forms a copartnership agreement between the contracting parties.

In our opinion the agreement is not open to the objection urged that by its express terms it provides for the fixing of compensation and abolishes competition between competitors in business and, therefore, is void as against public policy, under the doctrine of the case of More v. Bennett, 140 Ill. 69. The doctrine of that case has no application to the case at bar. We do not think that there is any rule of law or public policy which prohibits the members of two firms, merely, doing business in the same line, from forming a copartnership to conduct their joint business, as was contemplated by the agreement in question. The courts have never gone so far as to declare such an agreement void as against public policy or to refuse to administer relief to parties to the agreement.

We are of the opinion that taking the bill as true, as the matter was presented to the chancellor, he was warranted, under its averments, in appointing a receiver.

The order appointing the receiver will accordingly be affirmed.

*Affirmed.*