R. Wilson More *et al.*

*v.*

J. L. Bennett *et al.*

*Filed at Ottawa January 18, 1892.*

1. Contracts—*in restraint of trade—to prevent competition—to control prices.* A combination or conspiracy among a number of persons engaged in a particular business, to stifle or prevent competition, and thereby to enhance or diminish prices to a point above or below what they would be if left to the influence of unrestricted competition, is contrary to public policy, and the courts will refuse their aid to the enforcement of contracts by which such combinations are sought to be effected.

2. So a contract entered into by the members of a stenographic association in a city, by which the prices of reporting legal proceedings by shorthand are to be kept up by the prevention of competition, although such association may embrace but a comparatively small part of the stenographic reporters engaged in the business, but which is open for the admission of all reporters who may be induced to join, and by which a schedule of prices is fixed, and by which any member violating its rules as to prices is subject to a fine, is void, as tending to prevent a free and unrestricted competition in business.

3. Same—*in partial restraint of trade.* Contracts in partial restraint of trade which the law sustains are those which are entered into by a vendor of a business and its good-will with his vendee, by which the vendor agrees not to engage in the same business within a limited territory; and the restraint, to be valid, must be no more extensive than is reasonably necessary for the protection of the vendee in the enjoyment of the business purchased.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

This was a suit in assumpsit, brought by R. Wilson More and others, composing the firm of More & Dundas, against J. L. Bennett and others, composing the firm of Bennett, Edwards & Pettit, to recover damages resulting from an alleged breach of certain rules and by-laws of the Chicago Law Sten-

ographers Association, of which both the plaintiffs and defendants are members. To the declaration, which consists of two special counts, a demurrer was sustained, and the plaintiffs electing to abide by their declaration, judgment was rendered in favor of the defendants for costs. Said judgment has been affirmed by the Appellate Court on appeal, and the present appeal is from said judgment of affirmance.

The first count of the declaration alleges, in substance, that the plaintiffs and defendants are all stenographers by profession, and have, from the time of its organization, been members of said association, an association formed to promote the interests of its members by all proper methods, and to establish and maintain reasonable, proper and uniform rates for stenographic work done by the members of said association, and to secure to judges, lawyers and citizens of Chicago, efficient, competent and reliable law-reporting, at reasonable, proper and uniform rates, and to furnish them with the means of obtaining efficient and competent reporters, and to increase the efficiency of law-reporting in the county of Cook; that in accordance with its constitution and by-laws, said association had adopted a schedule of rates which were and are fair and reasonable, and had for more than fifteen years prior to the organization of said association been the established rates among law-stenographers, and had been and are still recognized as reasonable and established rates by judges and members of the legal fraternity, and by law-stenographers of the city of Chicago, there having been during said time no material variation from said rates among law-stenographers, said rates being less than those established in certain other large cities of the United States for the same class of work.

Said count further alleges that, in consideration of like promises and agreements on the part of the plaintiffs, and like payment of the membership fee of $5 by each of the plaintiffs to become members of said association, the defendants promised and agreed with the plaintiffs, that they would be

bound in their charges for work by the schedule of rates adopted by said association; that the defendants might cut rates against persons not members of said association, provided such cutting was in good faith and the rights of the plaintiffs were respected; that in no case where the defendants had any knowledge of the existence of a contract or reporting arrangement between the plaintiffs and any lawyer, corporation or any other person, would they attempt, by underbidding the rate established by said association or other unfair means, to secure such reporting.

That the rates established by said association were as follows: not less than twenty cents per folio for single copy; not less than twenty-five cents per folio for two copies; not less than twenty-eight cents per folio for three copies; and the rate of $10 per day for attendance, with the qualification that if a reporter was engaged by one of the parties to a suit, he, or any other reporter, knowing of such engagement, might take the other side of the case for $5 per day; but in no case should the reporter make any offer to any attorney after being informed by such attorney that he had engaged a reporter.

That while said association was in existence and the plaintiffs and defendants were members thereof, the plaintiffs entered into a contract or reporting arrangement with the county of Cook, by which said county employed the plaintiffs to report the proceedings and furnish transcripts thereof as said county should require, in a certain celebrated murder case then pending in the Criminal Court of Cook county, to-wit, the case of *The People* v. *O'Sullivan et al.*, known as the Cronin trial, said employment by said county being on the following terms, to-wit, $10 per day for attendance, and the regular rates for transcripts as established by said association, the plaintiffs agreeing with said county to do said work, if the county should demand it, at as low a rate as any reputable and established stenographer or firm of stenographers should in good faith bid for said work.

That the plaintiffs entered upon the performance of said contract, and were engaged in reporting the proceedings at said trial at said regular rates, yet the defendants, well knowing the premises, and the aforesaid contract or reporting arrangement between the plaintiffs and said county, and after the plaintiffs had been engaged on said case for, to-wit, seven weeks, and at a time when the defendants well knew that the plaintiffs had performed the most unprofitable part of said contract, and not regarding their said promise so made to the plaintiffs, did not respect the rights of the plaintiffs and the schedule rates so adopted by said association, and the fact that they knew that there was a reporting arrangement or contract between the plaintiffs and said county, but solicited said county and endeavored to secure from said county, by under-bidding and other unfair means, employment as law-stenographers to report and furnish transcripts of the proceedings at said trial, and made a certain bid to said county, by which they offered to do said work at a less rate than that established by said association, to-wit, $5 per day for attendance, twenty cents per folio for a single copy, twenty-two cents per folio for two copies, and all copies above two free of charge.

That thereupon the plaintiffs, because of said bid of the defendants, were required by said county to meet said bid, or to cease their employment on said trial, as by the terms of said employment said county had a right to do, and that the plaintiffs, for the purpose of remaining in employment on said trial, did meet the said bid of the defendants, and afterwards reported and furnished transcripts of the proceedings on said trial at the rates offered by the defendants; by means whereof they were deprived of divers gains and profits which would have accrued to them from the reporting and furnishing transcripts on said trial under the regular rates of said association, and in accordance with their original bid, and have suffered great loss and damage through the wrongful conduct

of the defendants, to the damage of the plaintiffs in the sum of $3000, and therefore they bring their suit, etc.

The second count contains substantially the same allegations as the first, and also the following: That said association numbers among its members only a small portion of the law-stenographers of the city of Chicago, and that said association was formed because a system of ruinous competition had sprung up among the stenographers of said city, by which the prices of stenographic work were depressed below reasonable rates, and also because a discreditable and dishonorable system of solicitation for business had sprung up, by which efforts were made on the part of stenographers to induce attorneys, corporations and other persons, to break their contracts already made with other stenographers, and that the objects of said association were to prevent said discreditable and dishonorable solicitation and to promote the interests of the members thereof by all proper methods, and to establish and maintain proper, and uniform rates for stenographic work done by its members.

Said second count also set out, *in extenso,* the constitution, by-laws and schedule of rates of said association, said constitution containing, among other things, the following provisions :

"The objects of this association shall be to promote the interests of the members thereof by all proper methods, particularly to establish and maintain proper rates for stenographic work done by members of the association.

"Any reputable stenographer regularly engaged in law reporting in Cook county shall be eligible to membership under the rules hereinafter provided.

"The association may adopt a schedule of rates to be charged by the members for stenographic work done by them, which schedule shall be binding upon every member."

Among the by-laws adopted by said association were the following:

"The membership fee shall be $5. The expenses of the association, above amount received for membership fees, shall be paid out of a fund to be collected by assessment, to be levied by the board of directors, from time to time, as may be necessary.

"The members of this·association shall respect each other's rights, and in no case where a member has knowledge of the existence of a contract or reporting arrangement between a fellow member and a lawyer, corporation, or any other person, shall he attempt by under-bidding, or other unfair means, to secure such reporting; but members of this association may cut rates against outsiders if they choose; such cutting, however, must be done in good faith, or the member will be liable to fine, as provided for other violations of the constitution and by-laws."

Said by-laws also provide, in case of any violation of the rules of said association by any of its members, for a trial of the member accused of such violation by a special arbitration committee, and the imposition of a fine in case of conviction of not less than $10 nor more than $25, to be paid into the treasury of the association, with the right on the part of the accused to an appeal to a meeting of the entire association to be called for that purpose; and it is further provided that: "In case where the differences between members require financial adjustment, the said arbitration committee shall decide between the parties," with right of appeal from the decision of said committee to any regular or special meeting of the association, whose decision in the matter is final.

The assignments of error call in question the decision of the Circuit Court sustaining the demurrer to said declaration.

Messrs. MATZ & FISHER, for the appellants:

The demurrer to the declaration can not be sustained on the ground that the declaration is insufficient in law to show a cause of action on the part of the plaintiffs, because the

facts therein alleged do not constitute a contract between the plaintiffs and defendants.   2 Blackstone's Com. 442.

The constitution and by-laws of a voluntary association, signed by the members thereof, constitute a contract, binding upon said members so long as they remain in said association; and this extends not only to the relations of the members to the association, but to their relations to one another.   *Wells* v. *Ives*, 97 N. Y. 222; *Flint* v. *Pierce*, 99 Mass. 68; *White* v. *Brownell*, 4 Abb. Pr. 193; 3 id. 327; *Hopkinson* v. *Marquis of Exeter*, L. R. 5 Eq. 63; *Masters' Stevedores' Ass.* v. *Walsh*, 2 Daly, 1; 2 Am. Ency. of Law and Eq. 708.

The contract declared upon is not void, as in restraint of trade.  *Shrainka* v. *Scharringhausen*, 8 Mo. App. 522; Green-hood on Public Policy, 688.

Reasonable restraints of trade, under limitations, as to locality, time and persons, are not condemned by the law. *Linn* v. *Sigsbee*, 67 Ill. 75; *Crafts* v. *McConoughy*, 79 id. 346; *Cobbs* v. *Niblo*, 6 Bradw. 60; *Gas Light Co.* v. *Gas Light Co.* 20 id. 473; Greenhood on Public Policy, 642-670, 683-770; *Wickens* v. *Evans*, 3 Y. & Jer. (Eng. Exch.) 318; *Salt Co.* v. *Salt Co.* 18 Grant's Ch. 540; *Hearn* v. *Griffin*, 2 Chitty, 407; *Masters' Stevedores' Ass.* v. *Walsh*, 2 Daly, 1; *Dolph* v. *Laundry Machinery Co.* 28 Fed. Rep. 553.

Mr. J. L. BENNETT, for the appellees:

This is a suit by members of a voluntary association against other members, based solely upon the constitution and by-laws of that association.

It is unnecessary to contest the proposition that the constitution and by-laws of an association, whether incorporated or not, constitute a contract.   The question in this case is, who are the parties to such contract?   Plainly, it is the association on one side, and the member on the other.   When the plaintiffs entered the association they agreed with the society to observe its constitution and by-laws, or suffer the penalty

for non-observance. Such penalty is expressly provided for, and is not that they shall be liable to any individual member.

The question as to whether, if there was ever a contract between plaintiffs and defendants, it was void, as in restraint of trade and against public policy, has been ably treated in the opinion of the Appellate Court, and we are satisfied with the reasoning therein.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The question is raised by counsel and discussed at some length, whether membership in the Chicago Law Stenographic Association established a contractual relation between the plaintiffs and defendants which gives to the plaintiffs a right of action against the defendants, for a violation of any of the rules of said association, as for a breach of contract; and, also, whether the only remedy for a violation of said rules is not that provided by the by-laws of the association, viz, a fine, to be imposed upon the offender, after a trial and conviction before an arbitration committee, duly appointed for that purpose. But as we view the case, it will be unnecessary for us to consider these questions, since, admitting that the constitution and by-laws of the association were in the nature of a contract as between the members, *inter se,* we are of the opinion that the contract thus established is so far obnoxious to well settled rules of public policy as to render it improper for the courts to lend their aid to its enforcement.

Whatever may be the professed objects of the association, it clearly appears, both from its constitution and by-laws, and from the averments of the declaration, that one of its objects, if not its leading object, is to control the prices to be charged by its members for stenographic work, by restraining all competition between them. Power is given to the association to fix a schedule of prices which shall be binding upon all its members, and not only do the members, by assenting to the

constitution and by-laws, agree to be bound by the schedule thus fixed, but their competition with each other, either by taking or offering to take a less price, is punishable by the imposition of fines, as well as by such other disciplinary measures as associations of this character may adopt for the enforcement of their rules.

The rule of public policy here involved is closely analogous to that which declares illegal and void contracts in general restraint of trade, if it is not indeed a subordinate application of the same rule. As said by Mr. Tiedeman: "Following the reason of the rule which prohibits contracts in restraint of trade, we find that it is made to prohibit all contracts which in any way restrain the freedom of trade or diminish competition, or regulate the prices of commodities or services. All combinations of capitalists or of workmen for the purpose of influencing trade in their especial favor, by raising or reducing prices, are so far illegal, that agreements to combine can not be enforced by the courts." Tiedeman on Commercial Paper, sec. 190.

Many cases may be found in which the doctrine here stated has been laid down and enforced. Thus, in *Stanton* v. *Allen*, 5 Denio, 434, where an association among the whole of a large part of the proprietors of boats on the Erie and Oswego canals was formed under an agreement to regulate the price of freight and passage by a uniform scale to be fixed by a committee chosen by themselves, and to divide the profits of their business according to the number of boats employed by each, with provisions prohibiting the members from engaging in similar business out of the association, it was held that, as the tendency of such agreement was to increase prices and to prevent wholesome competition, as well as diminish the public revenue, it was against public policy and void by the principles of the common law.

In *Hooker* v. *Vandewater*, 4 Denio, 349, the proprietors of five several lines of boats engaged in the business of trans-

porting persons and freight on the Erie and Oswego canals, entered into an agreement in which, "for the purpose of establishing and maintaining fair and uniform rates of freight, and equalizing the business among themselves, and to avoid all unnecessary expense in doing the same," they agreed to run for the residue of the season of navigation at certain rates of freight and passage then fixed upon, but which should be changed whenever the parties should deem expedient, and to divide the net earnings among themselves according to certain fixed proportions, and it was held, in a suit on the agreement against a party who failed to make payment according to its terms, that the agreement was a conspiracy to commit an act injurious to trade, and was illegal and void.

In *Morris Run Coal Co.* v. *Barclay Coal Co.* 68 Penn. St. 173, five coal companies in Pennsylvania entered into an agreement in New York, to divide two coal regions of which they had control; to appoint a committee to take charge of their interests, and decide all questions, and appoint a general agent at a certain point in the State of New York, the coal mined to be delivered through him, each company to deliver its proportion at its own cost at the different markets, at such time and to such persons as the committee should direct, the committee to adjust all prices, rates of freight, etc., and settlements to be made between the several companies monthly, and it was held in a suit brought by one of said companies against another, to enforce a liability arising under said contract, that the contract was in violation of a statute of New York making it a misdemeanor to conspire to commit any act injurious to trade or commerce, and was also against public policy and therefore illegal and void, the court laying down the rule, among other things, that every association formed to raise or depress prices beyond what they would be if left without aid or stimulus, was criminal.

In *Craft* v. *McConoughy*, 79 Ill. 346, a contract was entered into by all the grain dealers in a certain town, which, on its

face, indicated that they had formed a partnership for the purpose of dealing in grain, but the true object of which was to form a secret combination which would stifle all competition, and enable the parties, by secret and fraudulent means, to control the price of grain, costs of storage, and expense of shipment at such town, and it was held on bill filed for an accounting and distribution of profits, that such contract was in restraint of trade and consequently void on grounds of public policy. In discussing the principles involved, this court said: "While these parties were in business in competition with each other, they had the undoubted right to establish their own rates for grain stored and commissions for shipment and sale. They could pay as high or low a price for grain as they saw proper, and as they could make contracts for with the producer. So long as competition was free, the interest of the public was safe. The laws of trade, in connection with the rigor of competition, was all the guaranty the public required, but the secret combination created by the contract destroyed all competition and created a monopoly against which the public interest had no protection."

The doctrine of the foregoing decisions may, in our opinion, be fairly applied to the facts in the present case. While some of the cases cited involve elements not present here, the determining circumstance in all of them seems to have been, a combination or conspiracy among a number of persons engaged in a particular business, to stifle or prevent competition, and thereby to enhance or diminish prices to a point above or below what they would have been if left to the influence of unrestricted competition. All such combinations are held to be contrary to public policy, and the courts therefore will refuse to lend their aid to the enforcement of the contracts by which such combinations are sought to be effected.

Counsel seek to distinguish this case from those cited, by the circumstance alleged in the second count of the declaration, that but a small portion of the law stenographers of

Chicago belong to said association. An analogy is thereby sought to be raised between the contract in this case and those contracts in partial restraint of trade which the law upholds. We think the analogy thus sought to be raised does not exist. Contracts in partial restraint of trade which the law sustains are those which are entered into, by a vendor of a business and its good-will, with his vendee, by which the vendor agrees not to engage in the same business within a limited territory, and the restraint, to be valid, must be no more extensive than is reasonably necessary for the protection of the vendee in the enjoyment of the business purchased. But in the present case there is no purchase or sale of any business, nor any other analogous circumstance giving to one party a just right to be protected against competition from the other. All of the members of the association are engaged in the same business within the same territory, and the object of the association is purely and simply to silence and stifle all competition as between its members. No equitable reason for such restraint exists, the only reason put forward being, that under the influence of competition as it existed prior to the organization of the association, prices for stenographic work had been reduced too far, and the association was organized for the purpose of putting an end to all competition, at least as between those who could be induced to become members. True, the restraint is not so far-reaching as it would have been if all the stenographers in the city had joined the association, but so far as it goes, it is precisely of the same character, produces the same results, and is subject to the same legal objection.

It may also be observed that, by the constitution of the association any reputable stenographer regularly engaged in law reporting in Cook county is eligible to membership, and if all or a major part of the stenographers in said county engaged in that business are not already members, it is because the association has not yet fully accomplished the purposes

of its organization. We can see no legal difference between the restraint upon competition which it now exercises and that which it will exercise when it is in a position to dictate terms to all who are engaged in the business, and to all who may wish to obtain the services of law stenographic reporters.

We are of the opinion that the demurrer to the declaration was properly sustained, and the judgment will therefore be affirmed.

*Judgment affirmed.*