DEBBIE ABEL, d/b/a Tidy House Cleaning Service, Plaintiff-Appellant, v. DEBRA BANGHART FOX, Defendant-Appellee.

Fourth District   No. 4—95—0014

Opinion filed August 17, 1995.

812

Lorna K. Geiler, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellant.

Thomas A. Long, of Johnson, Frank, Frederick & Walsh, of Urbana, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Debbie Abel, d/b/a Tidy House Cleaning Service (Tidy House), appeals the trial court's grant of defendant Debra Banghart Fox' motion to dismiss plaintiff's complaint. We reverse and remand.

Defendant, a former at-will employee of Tidy House, signed a covenant not to compete with Tidy House sometime during her employment with it in 1990. The covenant stated upon termination of her employment with Tidy House, she would not compete with it for

three years within a 75-mile radius of Busey Bank in Urbana, Illinois. The covenant also stated she would not make use of customer lists acquired by her during her employment with Tidy House. Apparently there was no written employment agreement other than the covenant.

In August 1993, the owner of Tidy House, Barbara Rotert, sold Tidy House to plaintiff. Of the $57,000 purchase price, $52,000 was for customers and goodwill, including assignment of the covenants not to compete between Tidy House and its employees. Shortly after the sale, defendant decided to terminate her employment with Tidy House. She began to solicit, in writing, Tidy House's customers to switch from Tidy House to her newly formed cleaning service. She did not cease this activity upon request by plaintiff, and plaintiff filed suit in November 1993. Count I of the complaint requested a temporary restraining order be issued against defendant prohibiting her from violating her covenant not to compete. Count II of the complaint requested a permanent injunction be issued granting the same relief. Count III requested damages caused by defendant's violation of the covenant.

The complaint was amended in May 1994 to clarify the allegation the covenant not to compete was included in plaintiff's purchase of Tidy House from Rotert. The defendant filed a motion to dismiss plaintiff's complaint, which the trial court denied in July 1994. The trial court ordered defendant to answer within 28 days.

In August, defendant filed a motion to reconsider the motion to dismiss plaintiff's complaint, referring the trial court to a recent first district case, *Creative Entertainment, Inc. v. Lorenz* (1994), 265 Ill. App. 3d 343, 638 N.E.2d 217. The trial court, in its written ruling, seems to have interpreted *Creative Entertainment* to stand for the proposition a covenant not to compete cannot be enforced unless there exists a written employment contract, or perhaps an oral employment contract specifying a length of time of the employment. The trial court then stated it did not agree with *Creative Entertainment,* but believed it was compelled to follow the holding in that case and granted defendant's motion to dismiss plaintiff's complaint. Plaintiff now appeals.

■ The law regarding restrictive covenants is for the most part well settled. A post-employment restrictive covenant is generally held to be enforceable if it is reasonable in geographic and temporal scope and it is necessary to protect a legitimate business interest of the employer. However, prior to analyzing the reasonableness of a covenant not to compete, a court must make two determinations. First, the court must find the covenant is ancillary to a "valid

contract." The covenant must be subordinate to the contract's main purpose. Second, the court must determine whether there is adequate consideration to support the covenant not to compete. Continued employment constitutes adequate consideration for a post-employment covenant not to compete. *Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 745, 566 N.E.2d 379, 384.

The parties agree on these general principles. The dispute hinges over the meaning of the phrase "ancillary to a valid contract." *Creative Entertainment* is the only modern Illinois opinion to address the requirement of ancillarity. There, the plaintiff sought to enforce a covenant not to compete signed by the defendant, a former at-will employee of the plaintiff. The defendant signed the covenant eight months after beginning work for the plaintiff. There were no written terms of employment other than the covenant. The defendant then continued to work for the plaintiff for approximately two years, whereupon he resigned and began to compete with the plaintiff, even soliciting the plaintiff's customers. The plaintiff brought suit, seeking to enforce the restrictive covenant signed by the defendant. The trial court ruled in favor of the defendant, and the plaintiff appealed.

The appellate court's decision in *Creative Entertainment* affirmed the trial court's ruling. The appellate court based its conclusion primarily on *Mid-Town Petroleum, Inc. v. Gowen* (1993), 243 Ill. App. 3d 63, 611 N.E.2d 1221. In *Mid-Town Petroleum*, the plaintiff sought to enforce a covenant not to compete signed by the defendant, a former employee. The defendant argued there was insufficient consideration to support the covenant, and the appellate court agreed. The court noted although the defendant had been employed with the plaintiff since 1977, he did not sign the covenant until 1991, and then continued to work for the plaintiff only seven months after the signing of the covenant. The court declared continued employment following the making of a covenant could constitute consideration for the employee's signing of the covenant, but the defendant's period of further employment was "insubstantial" and therefore did not constitute sufficient consideration to render the covenant enforceable. The court also distinguished the facts from several other cases where Illinois courts had held post-covenant employment for two, three, four, eight, or nine years constituted sufficient consideration to render the noncompetition covenants in those cases enforceable.

Despite the narrow and well-defined issue in *Mid-Town Petroleum, Creative Entertainment* noted only certain facts from that case, and then, without noting the actual issue involved there, concluded:

> "We find *Mid-Town* stands for the proposition that where a defendant's employment is contingent upon signing a restrictive

covenant, without more, such evidence fails to establish the existence of an employment agreement. We therefore must agree with the trial court's determination in the instant case that plaintiff's restrictive covenant was a naked promise. It was not included as part of an employment agreement which set forth terms and conditions of employment ***." (*Creative Entertainment*, 265 Ill. App. 3d at 350, 638 N.E.2d at 221.)

The appellate court went on to explain why it believed the restrictive covenant at issue was a "naked agreement":

"It was not a promise by plaintiff of a definite term of employment in exchange for a promise by [defendant]. There were no provisions for termination of the employment relationship by either party, no additional incentives or forbearances. Clearly, the covenant was not ancillary to an employment contract. The sole purpose of the agreement was to restrain trade." (*Creative Entertainment*, 265 Ill. App. 3d at 348-49, 638 N.E.2d at 221.)

The appellate court noted the trial court had reasoned "that an at-will relationship is not the same as an employment contract, which the case law requires in order to enforce a restrictive covenant." (*Creative Entertainment*, 265 Ill. App. 3d at 351, 638 N.E.2d at 222.) The appellate court apparently agreed with the reasoning of the trial court by concluding "[r]ecovery under a restrictive covenant requires the existence of a valid employment contract; there was none here." *Creative Entertainment*, 265 Ill. App. 3d at 351, 638 N.E.2d at 222.

*Creative Entertainment* also distinguished two other cases where a court has upheld a restrictive covenant signed by an at-will employee: *Lyle R. Jager Agency, Inc. v. Steward* (1993), 253 Ill. App. 3d 631, 625 N.E.2d 397, and *Wyatt v. Dishong* (1984), 127 Ill. App. 3d 716, 469 N.E.2d 608.

In *Lyle*, the defendant, a former employee of the plaintiff, sought to escape the enforcement of a covenant not to compete he signed with the plaintiff. He argued there had been no employment agreement. The court noted the existence of both written and oral terms of employment, and concluded "obviously the parties intended to enter into an employment agreement." (*Lyle*, 253 Ill. App. 3d at 635, 625 N.E.2d at 399.) The court then ruled two years' continued employment after the signing of the covenant not to compete was sufficient consideration to support the enforcement of the covenant. *Creative Entertainment* concluded *Lyle* ruled the covenant was enforceable based on the existence of a valid employment contract. *Creative Entertainment* then distinguished *Lyle* on the ground that there, the defendant had signed a written employment agreement, and the agreement was for a definite employment term of two years.

In *Wyatt*, the court ruled enforceable a covenant not to compete

signed by a former at-will employee of the plaintiff. *Creative Entertainment* distinguished *Wyatt* on the ground the employment agreement in *Wyatt* was in writing.

We read *Creative Entertainment*, as did the trial court below, to stand for the proposition a covenant not to compete signed by an at-will employee employed under an oral agreement cannot be ancillary to an employment agreement, because an at-will employee employed under an oral agreement does not have an otherwise "valid employment contract." Plaintiff asserts *Creative Entertainment* ignored another well-settled principle: continued employment constitutes sufficient consideration to make a covenant not to compete enforceable. However, defendant correctly notes plaintiff misunderstands the nature of the holding in *Creative Entertainment*. The court's ruling there hinged on the ancillary nature of a covenant not to compete, not whether there was sufficient consideration to render it enforceable. Defendant urges us to agree with the rule adopted in *Creative Entertainment* that a covenant not to compete signed by an at-will employee cannot be ancillary to a "valid employment contract." However, this we decline to do.

■ Professor Farnsworth, in his treatise on contracts, discusses the historical basis for the requirement of ancillarity regarding covenants not to compete:

> "In applying th[e] rule of reason to promises to refrain from competition, courts have fashioned a requirement of ancillarity. To serve an interest of the promisee that is worthy of protection and that can outweigh the hardship to the promisor and any injury to the public, the restraint that the promise imposes must be *ancillary* to an appropriate transaction *or relationship* [(emphasis added)]. A *direct* or *nonancillary* restraint serves no such interest and is necessarily unreasonable; the promise that imposes the restraint is therefore unreasonable *per se*. If, for example, one merchant pays another in return for the other's naked promise not to compete in the same city, the restraint is nonancillary because it is not attached to any other transaction, and the promise is unenforceable." (Emphasis in original.) II E. Farnsworth, Farnsworth on Contracts § 5.3, at 18 (1990).

The requirement of ancillarity is described in section 187 of the Restatement (Second) of Contracts as follows: "A promise to refrain from competition that imposes a restraint that is not ancillary to an otherwise valid transaction *or relationship* is unreasonably in restraint of trade." (Emphasis added.) (Restatement (Second) of Contracts § 187, at 38 (1981).) Comment *b* to section 187 explains:

> "In order for a promise to refrain from competition to be rea-

sonable, the promisee must have an interest worthy of protection ***. *** The promisee's interest may arise *** out of a *relation* between himself as employer or principal and the promisor as employee or agent. *** [A] promise not to complete [*sic*] that is not ancillary to some such transaction *or relationship* as these is unreasonable because it protects no legitimate interest of the promisee. *** In order for a restraint to be ancillary to a transaction or relationship the promise that imposes it must be made as part of that transaction *or relationship*." (Emphasis added.) (Restatement (Second) of Contracts § 187, Comment *b* (1981).)

Section 188 of the Restatement (Second) of Contracts further expounds on the requirement of ancillarity by enumerating some specific situations where it occurs:

"Promises imposing restraints that are ancillary to a valid transaction *or relationship* include the following:

\***

(b) a promise by an employee or other agent not to compete with his employer or other principal." (Restatement (Second) of Contracts § 188(2)(b), at 41 (1981).)

Comment *g* to section 188 of the Restatement discusses specifically post-employment covenants:

"The employer's interest in exacting from his employee a promise not to compete after termination of the employment is usually explained on the ground that the employee has acquired either confidential trade information relating to some process or method or the means to attract customers away from the employer. *** *A restraint may be ancillary to a relationship although, as in the case of an employment at will, no contract of employment is involved.*" (Emphasis added.) (Restatement (Second) of Contracts § 188, Comment *g*, at 45 (1981).)

Courts in other jurisdictions have applied similar reasoning in considering the requirement of ancillarity. See, *e.g., Hopper v. All Pet Animal Clinic, Inc.* (Wyo. 1993), 861 P.2d 531, 540 ("Restatement (Second) of Contracts, *** § 187 [comment] b recognizes that in an ongoing transaction *or relationship* [(emphasis added)], a promise not to compete may be made before the termination of the *relationship* [(emphasis added)] and still be ancillary *as long as it is supported by consideration* [(emphasis in original)] and meets other requirements for enforceability"); *Zellner v. Conrad* (1992), 183 A.D.2d 250, 254, 589 N.Y.S.2d 903, 906 (noncompetition covenant must be "ancillary either to a contract for the sale of a business or to existing employment or a contract of employment [citations]. *** [A]t-will employment qualifies as a *relationship* [(emphasis added)] which will support a restrictive covenant").

We have been able to find only one other published case in any American jurisdiction that has resulted in a rule similar to the one adopted in *Creative Entertainment*. In *Travel Masters, Inc. v. Star Tours, Inc.* (Tex. 1991), 827 S.W.2d 830, 833, the Supreme Court of Texas held "that a covenant not to compete executed either at the inception of or during an employment-at-will relationship cannot be ancillary to an otherwise enforceable agreement and is unenforceable as a matter of law." Williston on Contracts notes the case, and calls its conclusion "far-reaching," as well as "perhaps the strictest ruling on the matter to date, and one that is subject to criticism on numerous grounds." Williston concludes *Travel Masters* "surely demonstrates that at least some courts are not the least bit reluctant to rely upon public policy in declaring bargains they perceive to be inappropriate invalid *per se*." 5 R. Lord, Williston on Contracts § 12:2, at 667 (4th ed. 1993).

Not only does the great weight of persuasive authority support a conclusion contrary to that in *Creative Entertainment*, a contrary conclusion is well-grounded in Illinois precedent. *Creative Entertainment* declared a post-employment covenant not to compete must be ancillary to a "valid employment contract." When the citations for this proposition are traced back, it is found to originate in Illinois in *More v. Bennett* (1892), 140 Ill. 69, 29 N.E. 888.

In *More*, the plaintiffs, a group of stenographers, brought suit against another group of stenographers. The plaintiffs sought to enforce what was in essence a noncompetition and price-fixing agreement among stenographers in the City of Chicago. In determining whether the noncompetition agreement would be enforced, the Supreme Court of Illinois reviewed cases in Illinois and other jurisdictions where the courts had refused to enforce restrictive covenants. The court concluded:

"[T]he determining circumstance in all of them seems to have been, a combination or conspiracy among a number of persons engaged in a particular business, to stifle or prevent competition, and thereby to enhance or diminish prices to a point above or below what they would have been if left to the influence of unrestricted competition. All such combinations are held contrary to public policy ***.

*** Contracts in partial restraint of trade which the law sustains are those which are entered into, by a vendor of a business and its good-will, with his vendee ***. But in the present case there is no purchase or sale of any business, *nor any other analogous circumstance giving to one party a just right to be protected against competition from the other*." (Emphasis added.) (*More*, 140 Ill. at 79-80, 29 N.E. at 891.)

The Supreme Court of Illinois later cited *More* to stand for the proposition that restrictive covenants usually involve vendor-vendee, partnership, or employer-employee relationships, and have been upheld where "the restraint of trade has been auxiliary to the main purpose of the contract, and has been necessary to protect one party from injury by the unfair use of the subject matter of the contract by the other party." *Union Trust & Savings Bank v. Kinloch Long Distance Telephone Co.* (1913), 258 Ill. 202, 207, 101 N.E. 535, 537.

As can be seen, the origin of the requirement of ancillarity in Illinois supports Professor Farnsworth's statement the rule of ancillarity was developed to prohibit "naked" anti-competition agreements between merchants. A "naked" promise by one merchant not to compete against another merchant is against public policy because it injures the public and the promisor, while at the same time it serves no *protectible* interest of the promisee. The requirement of ancillarity renders such "naked" price-fixing or other monopolistic agreements unenforceable. For example, the stenographers in *More* had no relationship other than they were engaged in the same profession and had entered into a noncompetition agreement. Therefore, their noncompetition agreement was not ancillary to any other relationship giving rise to a protectible interest and was deemed unenforceable.

However, as *Union Trust* explained, a restrictive covenant will be enforced where it protects the covenantee from the unjust use of the fruits of a contract by the other party. (See also *Hubbard v. Logsdon* (1978), 56 Ill. App. 3d 366, 374, 372 N.E.2d 101, 106.) The Supreme Court of Illinois has applied this reasoning in upholding a noncompetition agreement between business partners. (*Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 356-57, 134 N.E.2d 329, 332, quoting 5 S. Williston, Williston on Contracts § 1644, at 4650 (1947) (" 'The contract of a partner not to compete with the partnership either directly or indirectly is not opposed to public policy; but such an agreement must be ancillary to the *relation* or contract of partnership \*\*\*' " (emphasis added)); see also Restatement of Contracts § 516, Comment *f* (1932).) In the employer-employee relationship, the employer *might*, depending on the circumstances, have a protectible interest in confidential information or in its existing relationships with its customers. In Illinois, confidential information and customer relationships can be a protectible interest of an employer. (See, *e.g., Springfield Rare Coin Galleries, Inc. v. Mileham* (1993), 250 Ill. App. 3d 922, 930, 620 N.E.2d 479, 485.) This makes sense as well, because an employer understandably would wish to prevent its employees from using access to information or to a customer relationship for their own personal benefit and to the detriment of that employer. This is true regardless

whether its employees are employed for a term under a written contract, or whether they are employed at will under an oral agreement. It is the *relationship* between the employer and the employee that gives rise to the employer's need to protect itself from less-than-scrupulous employees.

Indeed, Professors Calamari and Perillo note that because of the public policy in preventing misuse or wrongful disclosure by an employee of confidential information of the employer, *"even in the absence of an express covenant,* employees may not, even after termination of employment, disclose or make use of trade secrets, including secret customer lists." (Emphasis added.) (J. Calamari & J. Perillo, Contracts § 16—19, at 685 (3d ed. 1987).) See also Restatement (Third) of Unfair Competition, which states:

> "An employee or former employee who uses or discloses a trade secret owned by the employer or former employer in breach of a duty of confidence is subject to liability for appropriation of the trade secret ***." (Restatement (Third) of Unfair Competition § 42, at 478 (1995).)

As can be seen, a rule that no protectible employer interests exist merely because an employee is employed at will, or because no written employment contract exists, has no basis in law or public policy.

■ In short, we conclude where *Creative Entertainment* understandably erred was in imprecisely stating the law. To be enforceable, a covenant not to compete must be ancillary to *either* a transaction (an otherwise valid contract), *or* a valid relationship. Although an at-will employment agreement, whether written or oral, might not be considered "enforceable" in the strictest sense of the term, it is nonetheless an agreement and relationship with numerous legal consequences, imposing rights and obligations on both parties. Therefore, a noncompetition covenant entered into by an at-will employee, whether the employee is employed under a written or oral agreement, complies with the requirement of ancillarity. This is because a covenant in such a situation is not a "naked" restraint on trade, but instead is merely ancillary to the primary purpose of the relationship: an employer-employee relationship. Thus, noncompetition covenants occurring in an at-will employment relationship are *not* unenforceable *per se*. Instead, the judicial determination whether they are enforceable is based on the same rules which apply to any other post-employment noncompetition covenant made during an employment relationship. Moreover, defendant has not shown, nor can we discern, any public policy which would render restrictive covenants made during an oral or written at-will employment relationship invalid *per se*.

■ Here, the parties do not dispute defendant was employed by plaintiff under an oral at-will employment agreement for a period of several years. The parties also do not dispute defendant signed the noncompetition agreement while she was still employed with Tidy House. Therefore, the noncompetition covenant signed by defendant was not a naked restraint on trade, but was merely ancillary to the primary purpose of the ongoing employment relationship at the time.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion. We express no opinion whether the particular noncompetition covenant at issue here is enforceable in whole or in part, based on the other requirements for enforceability of a post-employment covenant not to compete.

Reversed and remanded.

GREEN and GARMAN, JJ., concur.