**SYSTEMAX, INC., etc., Plaintiff,**

v.

**Donald M. SCHOFF, et al., Defendants.**

**No. 97 C 5014.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 29, 1997.

William Lynch Schaller, John M. Murphy and Ashley Hall of Baker & McKenzie, Chicago, IL, for Plaintiff.

Susan M. Benton–Powers and Susan H. Rider of Sonnenschein, Nath & Rosenthal, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Donald Schoff ("Schoff") and Comark, Inc. ("Comark") have moved to dismiss Counts II, III and IV of the Complaint brought against them by Systemax, Inc. d/b/a Global Computer Supplies ("Global"[1]) in this diversity of citizenship action. All three of the challenged counts hinge on the customer nonsolicitation and employee nonsolicitation covenants contained in the Employee Agreement Regarding Proprietary and Confidential Information, Patents and Trade Secrets ("Agreement") that Schoff had signed while he was with Global:

1. Count II is based on Schoff's claimed breach of the customer nonsolicitation covenant (Agreement ¶ 8).

2. Count III is based on Schoff's claimed breach of the employee nonsolicitation covenant (Agreement ¶ 7).

3. Count IV charges Comark with tortious interference with the Agreement (a claim that necessarily depends on the va-

---

1. Global is a division of Systemax for which Schoff used to work before he left it to become employed by Comark or one of its affiliated corporations.

lidity and enforceability of the Agreement itself).

Based on the parties' submissions addressing defendants' motion, none of those three counts is dismissed on the basis of the Agreement's inherent unenforceability (that is, based on any claimed lack of consideration). Further briefing is called for, however, as to the other grounds advanced by defendants.

### Factual Matrix

In this Fed.R.Civ.P. ("Rule") 12(b)(6) context, the Complaint's well-pleaded allegations are taken as gospel. Thus although defendants submit some documents in an effort to undercut Global's claims, this opinion will not take those into account as though Rule 56 rather than Rule 12(b)(6) were in issue (see, e.g., *Doe v. First Nat'l Bank*, 865 F.2d 864, 873 (7th Cir.1989)). But the obvious corollary is that no inference should be drawn from the present ruling that what Global charges by way of Agreement-violative conduct is *in fact* accurate.

Instead the only relevant facts as to the presence or absence of adequate consideration for the challenged covenants (or relatedly as to their ancillary character) are that Global employed Schoff from May 30, 1994 to April 18, 1997 (Complaint ¶ 6) and that the Agreement was not signed at the time of Schoff's hiring (which took place without the parties' entry into any agreement, and which was concededly an at-will employment). Instead it was something over six months after his initial hiring that Schoff signed the Agreement on December 16, 1994 (Complaint ¶ 24).

### Legal Matrix

■ This question of the enforceability against an at-will employee of a post-hiring employee restrictive covenant is one as to which the parties agree that the Illinois Supreme Court has not spoken. Two recent Illinois Appellate Court decisions, emanating from different Districts, are 180° out of phase with each other. Less than three years ago, *Creative Entertainment, Inc. v. Lorenz*, 265 Ill.App.3d 343, 346–49, 202 Ill.Dec. 571, 573–76, 638 N.E.2d 217, 219–22 (1st Dist.1994)— with then Justice Blanche Manning, now a

colleague of this Court on the federal bench, speaking for the court—refused to enforce a restrictive covenant signed by an at-will employee eight months after he began working because, as the court viewed it, such a covenant in an at-will employment relationship is an unenforceable "naked agreement" whose "sole purpose ... was to restrain trade" (*id.* at 348–49, 202 Ill.Dec. at 575, 638 N.E.2d at 221). Then in the following year, another Appellate District Court in *Abel v. Fox*, 274 Ill.App.3d 811, 813–21, 211 Ill.Dec. 129, 131–36, 654 N.E.2d 591, 593–98 (4th Dist.1995) criticized and refused to follow *Creative Entertainment* by holding that adequate consideration existed to render such an after-hiring restrictive covenant enforceable—at least where (as here) the employee has worked for a substantial period after signing the covenant.

Although Illinois law for *Erie v. Tompkins* purposes is pronounced by the Illinois courts and not by what federal courts may say about it, two federal decisions in this area also bear mention both here and later in this opinion. Before either *Creative Entertainment* or *Abel* was decided, *Curtis 1000 v. Suess*, 24 F.3d 941, 944–47 (7th Cir.1994) predicted that if the question were posed to the Illinois Supreme Court it would find adequate consideration to support enforceability if the employee continued to work for a "substantial" period after signing the restrictive covenant. Then *post-Creative Entertainment* and post-*Abel*, this Court's colleague Honorable Ruben Castillo adopted the same predictive stance and opted for the *Abel* approach in *Applied Micro, Inc. v. SJI Fulfillment, Inc.*, 941 F.Supp. 750, 753–58 (N.D.Ill.1996).

### Conflict Resolution

In overruling a near century of federal judicial independence under *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) held that the Constitution requires every federal court to adopt and apply the identical substantive standards that its state court counterpart would under like circumstances. Then although some of the early *Erie* progeny held

that the controlling state law for that purpose could be found in decisions of state courts that ranked extraordinarily low on the jurisprudential totem pole,[2] there has been a pretty well universal shift by the federal judiciary to a hypothetical approach that seeks to predict what the highest state court would do with the problem if it were called on to decide the issue (*Curtis 1000*, 24 F.3d at 945–47 is a good example of that approach). And such an approach is taken even though that process may often call for the rejection of decisions by state courts that stand only one rung below the jurisdiction's highest court on the judicial ladder.

■ But as this Court has urged for some years, Illinois law is quite special (if not actually unique) in those terms. There is really no need to rehearse the question in terms of the several exchanges that took place in the intellectual debate that this Court enjoyed with its then colleague Honorable Prentice Marshall in that respect.[3] Now a more recent (and truly dispositive) event—an Illinois Supreme Court decision— has made it abundantly clear that there is *no* conflict between the predictive approach and the approach that this Court has consistently urged should be taken in situations such as the present one.

It has been part of the *Erie* canon for more than a half century that the state law that federal courts are bound to apply in diversity cases includes the state court's choice-of-law rules, which are viewed as substantive and not procedural for that purpose (*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). And the Illinois Supreme Court has now confirmed the existence of a clear choice-of-law rule, in the type of situation before this Court, that frequently obviates

any resort to the reading of tea leaves that the predictive process involves—for that court has squarely pronounced, some years after the dialogue between this Court and then Judge Marshall came to an end, that (*State Farm Fire & Cas. Co. v. Yapejian*, 152 Ill.2d 533, 539–40, 178 Ill.Dec. 745, 748, 605 N.E.2d 539, 542 (1992) (citations omitted)):

> A decision of the appellate court, though not binding on other appellate districts, is binding on the circuit courts throughout the State. This was not an instance in which the circuit court was faced with conflicting decisions from the various appellate districts and, in the absence of controlling authority from its home district, would have been free to choose between the decisions of the other appellate districts.[4]

As just said in n. 4, that pronouncement definitively confirms the position that this Court has advanced from the beginning based on what it has referred to as the *Thorpe–Garcia* rule. But far more importantly, *State Farm* eliminates any need for any prediction, any divination, as to what the Illinois Supreme Court unequivocally directs in the situation that is now at hand: With that Court having set the course that *must* be taken by any Illinois Circuit Court that would be required to decide the substantive issue posed by defendants' current motion, this Court—as the federal counterpart of such a Circuit Court under *Erie* principles— is equally obligated to follow the identical course.

To illustrate the operation of *State Farm's* confirmation of the *Thorpe–Garcia* rule, suppose that Schoff had been employed and had executed the Agreement in Cook County, within Illinois' First Appellate District (an unfounded assumption, as the later discussion reflects). On that hypothesis there is no

---

2. Most notorious among those instances is the decision in *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), where the Supreme Court held that all federal courts (even the Supreme Court itself) were bound to follow the opinion of a state court vice-chancellor (a nisi prius judge in New Jersey), even though that decision would not have been binding on the state's highest court or even on any other New Jersey vice-chancellor.

3. See this Court's opinion in *Abbott Lab. v. Granite State Ins. Co.*, 573 F.Supp. 193, 196 & n. 1 (N.D.Ill.1983) and cases cited there.

4. [Footnote by this Court] As authority for that last statement, the Illinois Supreme Court cited the same two Appellate District cases that this Court has relied on all along, in speaking of that same principle of compulsory adherence to Appellate Court authority, as "the *Thorpe–Garcia* rule."

question that under the Illinois Supreme Court's ruling, a suit brought by Global against Schoff and Comark in the Circuit Court of Cook County would trigger their invocation of *Creative Entertainment* to require dismissal of the three counts based on the consequently unenforceable Agreement. And that being so, this diversity tribunal would have to do exactly the same, irrespective of whether its preference if it were left to its own devices would have been to adopt the same view as that expressed in *Creative Entertainment* or, instead, the polar opposite view expressed in *Abel.*

But the actual facts here do not conform to that just-stated hypothetical assumption. Instead Global is headquartered in Naperville—within DuPage County, in Illinois' Second Appellate District. Schoff resides in Glendale Heights—in the same County and District. All of that being so, the other facet of the earlier-quoted *State Farm* directive would have applied in a state-court-filed action, leaving the Circuit Court there "free to choose between the decisions of the other appellate districts"—in this instance the First and the Fourth. And this Court's Erie-based analytical approach from the very beginning has been to require the federal courts to follow exactly the same decisional course.[5]

This then is a situation in which the Illinois–Supreme–Court–predictive approach does apply—not because it is always the correct response to the *Erie* inquiry, but rather because the Illinois Supreme Court has mandated that choice-of-law approach in the specific situation before this Court. And that being so, this Court is bound to follow the conclusion that was earlier reached by our Court of Appeals in making such a prediction on parallel facts. *Curtis 1000* calls for adherence to the conclusion later reached in *Abel,* and the corresponding rejection of the conclusion later reached in *Creative Entertainment.*

One last point is worth making. It would of course be far preferable if a federal District Judge, confronted with the type of conflict among Appellate Districts represented by *Creative Entertainment* and *Abel,* could

certify the question to the Illinois Supreme Court for its possible resolution of those conflicting rulings. Some other jurisdictions do extend that privilege to all federal courts, but in this state Ill.S.Ct. Rule 20(a) gives that opportunity only to the United States Supreme Court and to the Court of Appeals for the Seventh Circuit. With all due respect, that constitutes less than the optimum utilization of a valuable concept.

But in any event, if this or any comparable case were to come before our Court of Appeals, and if it had a concern lest the *State Farm*-dictated result inaccurately reflected what the Illinois Supreme Court would itself rule on the legal question at issue, the Court of Appeals could invoke Ill.S.Ct. R. 20(a) to ask for the Illinois Supreme Court's ruling. To be sure, the granting of such a request is discretionary on the part of the Illinois Supreme Court. But that is no different from the situation in which a decision by the Circuit Court of Cook County is appealed to the First District Appellate Court, which then rules in accordance with its own precedents. There the losing litigant's only possibility of obtaining a different ruling is to file a petition for leave to appeal—and that too is an infrequently-granted discretionary action by the Illinois Supreme Court. In short, when *State Farm* is followed in every instance by a federal court, the *Erie*-mandated equivalence between state law determinations in the state and federal court systems is total: it exists not only substantively but procedurally.

### Conclusion

For the reasons stated in this memorandum opinion and order, this Court (1) follows the substantive teaching of the Illinois Supreme Court in *State Farm,* which in this instance grants discretion to predict how that Court would rule on the merits, and hence (2) follows the teaching of *Curtis 1000* in that respect. In so doing, this Court conforms to the express directive of the Illinois Supreme Court—in total faithfulness to the rule of law set down in *Erie v. Tompkins* and its progeny. It is regrettable that this problem has never come before our Court of Appeals with

5. See Appendix.

the analysis set out here—particularly since the Illinois Supreme Court has announced its own adherence to the *Thorpe–Garcia* choice-of-law doctrine. But until that comes about, this Court's view is that *Erie* and the Constitution demand no less.

Complaint Counts II, III and IV therefore survive the first facet of defendants' attack on the validity of the Agreement. As for the remainder of that attack, which poses other legal issues bearing on the Agreement's validity and enforceability, defendants will be given the opportunity to reply to Global's response—a reply to be filed in this Court's chambers on or before August 5, 1997.

*Appendix*

Despite this Court's great respect for its colleague Judge Castillo and the consistently thoughtful opinions that he produces, this is one instance in which his analytical stance is demonstrably wrong. Even apart from the failure of *Applied Micro* to perceive (or even advert to) the significance of the *State Farm* rule to the relevant legal analysis, *Applied Micro*, 941 F.Supp. at 755–56 repeats Judge Marshall's wholly mistaken notion that the Illinois Supreme Court's choice-of-law rule fosters forum shopping when adhered to (as it must be) by a federal district court. Judge Marshall and now Judge Castillo raise the false spectre of a defendant's removal of a state-filed case from a non-Cock County area (say DuPage County) to this District Court in hopes of invoking more favorable First Appellate District precedents.

But that total misunderstanding really reflects a failure to have read and understood (even though *Applied Micro, id.* at 755 n. 5 cites) this Court's opinion in *Commercial Discount Corp. v. King*, 552 F.Supp. 841, 848–51 (N.D.Ill.1982), which explained why Judge Marshall's point in his *Kelly v. Stratton*, 552 F.Supp. 641 (1982) decision (cited and quoted in *Applied Micro* ) was ill-conceived. As this Court has said from the outset, the key to what version of unsettled Illinois law applies is *not* the geographical situs of the federal courtroom in Chicago— quite to the contrary, as *Rizzo v. Means Servs., Inc.*, 632 F.Supp. 1115, 1132–33 (N.D.Ill.1986) explained a few years later:

There is plenty of room to criticize (as unsound constitutional doctrine) *Erie's* compelled slavish adherence to state law. But so long as *Erie* binds us, we are not free to pick and choose which established state law doctrines we want to follow and which we do ignore the unequivocal *Thorpe–Garcia* choice-of-not—to law mandate in favor of giving ourselves greater latitude in essaying to predict future Illinois Supreme Court decisions where Illinois Appellate Districts differ on rules of law. That latter approach fosters forum shopping in precisely the way *Erie* sought to eliminate: by creating the prospect of differing results for the diversity plaintiff who has a choice between filing suit in one of two Clerk of Court's Offices four blocks apart on Chicago's Dearborn Street, or for the diversity defendant who must decide whether or not to remove a case from the northernmost of those courts to the southernmost.

That last geographical illustration (and it must be understood as only an example, occasioned by the fact that most cases filed in this District Court have a Cook County nexus) suggests a brief word on the straw man raised by some of the opinions of this Court's colleagues that espouse the Supreme–Court–predictive approach. This Court's adherence to *Thorpe–Garcia* should not be misread as automatically looking to the Illinois Appellate Court for the First District just because this Court sits (in the literal physical sense) within that District. Such an approach could of course lead to exactly the same kind of forum shopping *Erie* and this Court seek to avoid. What proper analysis calls for is a two-step inquiry: First, the federal court must determine which is the proper Appellate District to look to (in a case originally filed in this District Court, that is a function of the Illinois venue provisions that would have controlled the plaintiff's choice had the suit been filed in state court; in a removed case, the location of the state court where suit was filed provides the precise and obvious answer). Second, only then does the federal court ascertain the applicable state law as in force in that

Appellate District (including, if relevant, the use of the *Thorpe–Garcia* rule).

Indeed, back in 1982 *Commercial Discount*, 552 F.Supp. at 848–52 had rung all of the possible venue-related changes to demonstrate (*id.* at 850) "that in no instance does this Court's treatment *advance* the cause of forum shopping. And if and to the extent it *permits* that device, it only mirrors what is equally available to the state court litigant. *Erie* asks (or commands) no more."