NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2014[*]
Decided March 12, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 13-3013

| | |
|---|---|
| JACK C. SWENSON, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 11 C 4295 |
| SALIENT CORPORATION, et al., | |
|     *Defendants-Appellee*s. | Ronald A. Guzmán, |
| | *Judge.* |

**O R D E R**

Jack Swenson sued his former employer, Salient Corporation, and several of its executives, contending that by firing him they committed age discrimination, *see* Age Discrimination in Employment Act, 29 U.S.C. § 623(a), and violated state law (breach of contract and unlawful termination). The district court granted summary judgment to

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

the defendants. Because no evidence links age bias to Swenson's discharge, and the record establishes that he was an at-will employee under state law, we affirm.

Salient, a consulting company, hired Swenson as Senior Vice-President of Healthcare in 2010 but terminated his employment less than two months later. His employment began after he discussed the position with Guy Amisano, the company's chief executive, and Bill Carpenter, its chief operating officer. That discussion led to a written offer from Christine Cavanaugh, the corporate controller, dated June 16, 2010. The offer specified that Salient would require him to work on a business plan for the company's new healthcare initiative during his first 60 days on the job. The offer also stated that it "does not constitute an employee contract (i.e., either one of us can terminate employment at will, with or without cause). Further, this offer of employment supersedes any prior or subsequent oral representation that might be made." Swenson submitted a counteroffer, asking Carpenter, among other things, to remove the at-will language. Salient issued a new offer on June 17 that accepted some of Swenson's requests but kept, verbatim, the paragraph on at-will employment. Swenson accepted that offer with his signature.

When he began working, Swenson acknowledged in writing that he received the company's handbook, which sets forth Salient's at-will employment policy. The second paragraph of his acknowledgment declares: "I understand that no statement contained in the Employment Handbook creates any guarantee of continued employment or creates any obligation, contractual or otherwise, on the part of Salient Corporation. I have entered into my employment relationship with Salient Corporation voluntarily, and I acknowledge that there is no specified length of employment."

Swenson's first day with Salient was June 28, giving him 60 days from then (until August 27) to produce a business plan. The day before Swenson was scheduled to leave for a pre-approved cruise vacation on August 5, Carpenter asked Swenson for a draft of the plan, as they had discussed previously. Carpenter did not hear from Swenson until he returned from vacation on August 13, and, again, asked for a draft of the plan. When Carpenter had not received a draft by the following Monday, with Amisano's approval he fired Swenson for insubordination and lack of performance.

In this suit, Swenson maintains two principal claims. His first claim is that Salient fired him because of his age. According to his deposition testimony, on his first day of work, Carpenter demanded that Swenson tell him his age (which was 56). When Swenson refused, Carpenter became increasingly agitated. Swenson also testified that

on his third day of work Amisano, too, demanded his age several times and became angry when Swenson again did not oblige. The company, he says, also required that he participate in activities that prevented him from completing the business plan. Swenson views the age inquiries and extra activities as evidence of age bias. His second claim challenges his discharge under state law. He argues that his June 17 offer plus other communications establish an employment contract that Salient breached by firing him.

The district court granted summary judgment for the defendants. It assumed that the executives had asked Swenson about his age but concluded that neither those remarks, nor his workload, implied that he was fired because of his age. The court also concluded that, based on the June 17 letter and company's employee handbook, he was an at-will employee; therefore Swenson could not prevail under state law. (Earlier in the case, the district court had also dismissed a due-process claim; Swenson does not challenge that dismissal, so we say nothing further about it.)

On appeal Swenson first challenges the district court's ruling that no evidence supported his claim of age discrimination. He again cites to Amisano and Carpenter's remarks about his age, which, he says, were made "around the same time" as his discharge. He also repeats his contention that the extra "job duties and tasks that required his constant attention" prevented him from focusing on the business plan and were added because of his age. He proceeds under the direct method of proof, under which a plaintiff claiming age discrimination may rely on circumstantial evidence of suspicious timing, ambiguous statements, and "other bits and pieces" from which an inference of discriminatory intent might be drawn. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012) (internal citation and quotation marks omitted); *see Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114–15 (7th Cir. 2009); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003).

Swenson's evidence does not support a reasonable inference that Salient discriminated against him based on his age. We begin with his assertion that Amisano and Carpenter, both decisionmakers, demanded that Swenson divulge his age. We may assume that they asked for his age (though they deny it) and that their inquiry reflected age bias (although neutral reasons for the inquiry are possible). To be actionable under the direct method, however, a decisionmaker's discriminatory remarks must be both contemporaneous to the adverse employment action and refer to that adverse action. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012); *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009); *Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Amisano and Carpenter's remarks do not meet either

requirement. Swenson testified that they questioned him, not "around the same time" as his discharge, but during his first three days of work. Because the comments preceded his discharge by nearly two months, they were not contemporaneous to the firing. *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910–11 (7th Cir. 2002) (finding supervisors' statements made "nearly two months" before firing were not contemporaneous to discharge and thus not evidence of discrimination). Furthermore, when they questioned him at the onset of his employment, they did not refer to or threaten any adverse action. And when they fired him after he did not produce a draft business plan, they did not refer to his refusal to divulge his age. On this record, then, a reasonable jury could not infer an age-discriminatory discharge from earlier, limited requests for his age.

Swenson's evidence about his workload also falls short because he has not specified what the extra assignments entailed. Without some detail about the work, let alone a reason to connect it to Swenson's age, a reasonable jury could not find that Salient, by imposing those tasks, acted with discriminatory intent. *See Lucas v. Chi. Trans. Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (refusing to consider plaintiff's assertions that African–Americans were treated "more harshly" in that they were given tougher assignments where plaintiff offered no specifics to support his assertions).

Swenson next contests the district court's rejection of his state-law claims, but the grant of summary judgment was correct because he was an at-will employee who could be fired for any non-forbidden reason, or no reason. *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 778 (7th Cir. 2012); *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992). In Illinois, employment that is not for a fixed term is presumed to be at will and terminable by any party at any time. *A.T.N., Inc. v. McAirlaid's Vliesstoffe GMBG & Co.*, 557 F.3d 483, 486 (7th Cir. 2009); *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1349 (Ill. 1997). That describes Swenson's arrangement. The June 17 offer that Swenson accepted provides that "either one of us can terminate employment at will, with or without cause." Swenson also agreed that "this offer of employment supersedes any prior or subsequent oral representation that might be made." What's more, Salient's employee handbook, which Swenson also signed, repeats that his employment at the company was at will.

Swenson argues that four documents refute that he was employed at will. *See Janda v. U.S. Cellular Corp.*, 961 N.E.2d 425, 437–38 (Ill. App. Ct. 2011). He points to two restrictive covenants that he signed, one 3-year noncompete agreement, and one 10-year nondisclosure agreement. He believes that these are irreconcilable with at-will employment. Swenson also points to the employee handbook and job application. He

argues that both contemplate that Salient's president can execute employment contracts that override an at-will presumption. Because he reported to the president, Swenson concludes, he must not have been employed at will.

None of these documents suggests that Swenson was not employed at will. Illinois law recognizes that an employer's need for restrictive covenants like Swenson's is consistent with at-will employment. *See Abel v. Fox*, 654 N.E.2d 591, 597 (Ill. App. Ct. 1995); *see also Medtronic, Inc. v. Benda*, 689 F.2d 645, 654 & n.4 (7th Cir. 1982) (recognizing coexistence of at-will employment and restrictive covenants). And although Amisano has the power to execute contracts that may override the presumption of an at-will employment relationship, Swenson furnished no evidence that he did. To the contrary, as we have already observed, the offer letter that Swenson signed stated that the relationship was at will. In any case, that letter was signed by Cavanaugh, the corporate controller, not Amisano.

Lastly, we reject Swenson's contention that the handbook's discussion of at-will employment is ineffective because the policy is buried inside the manual. Although the discussion is toward the end of the handbook, at-will employment is defined in the first sentence of the section on dismissals. Moreover, the second paragraph of the acknowledgment form that he signed repeats his understanding that the handbook creates no "guarantee of continued employment." This prominence is sufficient to create at-will employment status. *See Habighurst v. Edlong Corp.*, 568 N.E.2d 226, 228–30 (Ill. App. Ct. 1991) (approving disclaimer on signed, last page of handbook).

Accordingly, we **AFFIRM** the judgment of the district court.